I, Keith Wilson, being duly sworn, depose and state as follows:

1. Your affiant, Keith Wilson, is a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice, Denver, Colorado. Your affiant is an investigative or law enforcement officer of the United States, within the meaning of Title 18, United States Code, Section 2510(7), that is an officer of the United States empowered by law to conduct investigations of, and to make arrests for, offenses enumerated by statute in the United States Code, and the Colorado Statutory Code. Your affiant is authorized under the Federal Rules of Criminal Procedure, Rule 41(a)(1)(C) as a Federal law enforcement officer who is engaged in enforcing the criminal laws, and is within any category of officers authorized by the Attorney General to request a search warrant.

2. Your affiant has been employed as a Special Agent with ATF for (3) three years. Your affiant's primary duties consist of the enforcement of federal firearms laws, armed narcotics trafficking, and conspiracy laws. Your affiant has conducted over (45) forty investigations regarding federal firearms laws, armed narcotics trafficking, and conspiracy laws as an ATF Special Agent. Your affiant has also conducted and/or participated in such investigations as a sworn police officer in the State of Oregon. Prior to becoming an ATF Special Agent, your affiant was employed as a police officer with the Lake Oswego Police Department, Oregon, for approximately (4) four years. While at the Lake Oswego Police Department, your affiant assisted in the apprehension and investigation of individuals involved in serious violent crime to include but not limited to, Home Invasion, Robbery (armed and strong arm), Aggravated

Assault and Assaults, Narcotics Crimes to include Manufacture, Distribution and Possession of Controlled Substance, Unlawful Possession of Dangerous Weapons, and Unlawful Discharge of Firearms & Reckless Endangerment. Your affiant has written and participated in the execution of several federal search warrants involving firearms and narcotics and written approximately twenty (20) federal and state search warrants involving violent crime against persons, crimes against property, crimes involving narcotics, and alcohol.

3. This affidavit is made in support of an application for a search warrant for the following apartment: 4255 Kittredge Street Apartment 1511, Denver, CO (hereinafter referred to as TARGET LOCATION).

4. As an ATF Special Agent, your affiant is familiar with federal criminal laws pertaining to narcotics violations. Your affiant knows that it is a violation of Title 21 U.S.C. § 841(a)(1) for any person knowingly or intentionally to manufacture, distribute, dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. Your affiant knows that it is a violation of Title 21 U.S.C. § 846 for any person to conspire to manufacture, distribute, dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. Your affiant knows that it is a violation of Title 18 U.S.C. § 922(a)(1)(A) for any person to be willfully engaged in the business of dealing/importing/manufacturing without a license. Furthermore, your affiant knows it is a violation of Title 18 U.S.C. § 922(g)(5) for any person who is an alien illegally and unlawfully in the United States to knowingly possess/ship/transport/receive a firearm/ammunition.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21 U.S.C §§ 841(a)(1) and 846 and Title 18 U.S.C. § 922(a)(1)(A) and 922(g)(5) have been committed, are being committed, and will be committed by Jesus CELESTIN-ORTEGA. There is also probable cause to believe that the information described in Attachment A will constitute evidence, as detailed in Attachment B, of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

6. Based on your affiants training and participation in firearms investigation and narcotic investigations involving large amounts of illegal narcotics and U.S. currency your affiant knows:

   a. Firearm and narcotic traffickers often hold assets in nominee names to conceal any connection between any such asset and themselves, attempting in this way to avoid detection of their illegal activities by law enforcement agencies.

   b. Firearm and narcotic trafficking on the scale revealed in this investigation is frequently a continuing activity, and the traffickers' inventory of firearms fluctuates depending on availability and demand. Additionally, firearm traffickers commonly front firearms, or provide them on consignment to their customers. For all of these reasons, the traffickers must maintain books, receipts, notes, ledgers or some other type of record reflecting such transactions. Firearm and narcotic traffickers must keep their records in some secure, yet readily accessible, place where they can be used and maintained, such as in homes, offices, places of business, automobiles, safes or safe deposit boxes. Traffickers must keep these records of their illegal activities beyond the time during which firearms and/or narcotics are actually in their possession, so that they can

     maintain contact with their criminal associates for future firearm and/or narcotics transactions and so that they can keep records of prior transactions for which they might be owed or owe inventory or money.

c. Firearm and narcotic traffickers commonly hide firearms, narcotics, firearm and/or drug proceeds, and records of their firearm and/or drug transactions in secure locations, such as those mentioned in paragraph (b) above, as well as in offices or places of business, garages, or storage buildings. Similarly, firearm and narcotics traffickers have ready access to these items, and attempt to conceal them from law enforcement agencies.

d. Firearm and narcotic traffickers commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses, and telephone numbers for their firearm and/or narcotics trafficking associates. These items are sometimes in code.

e. Firearm and narcotics traffickers frequently have photographs of themselves, their associates, their property, firearms, and controlled substances, which are usually maintained in their homes, offices and place of business. Such photographs constitute evidence of their drug and firearm trafficking activities, establishing their connections with items of property with each other, and with drugs.

f. Firearm and narcotics traffickers involved in importation or transportation of firearm from source cities generally possess documentation, such as telephone records, correspondence, shipyard receipts, wire transfers, airline ticket receipts, and the like, which pertain to the acquisition, transportation, shipment, or receipt of, or payment for, firearms and/or controlled substances, and which evidences the trafficker(s)' participation in the illegal drug scheme.

g. Firearm and narcotic traffickers often maintain some record of the movement of money, whether it is accomplished by wire or inter-bank transfer or by a person acting as a courier. Such records, even though they may be in code, are evidence of the trafficker's illegal activities.

h. Firearm and narcotic traffickers often use false or fictitious names or corporations or other business entities to launder their firearm and/or narcotics proceeds and to send shipments of cash through the mail or other delivery services. Banks, both domestic and abroad, are sometimes utilized by traffickers or their agents though which proceeds from their illegal activities are laundered. Funds are frequently transferred between banks and various accounts to conceal their sources and origins. It is also common to obtain bearer or other negotiable instruments through foreign banks to avoid the necessity of filing currency transaction reports, in this manner concealing the fact of the transaction and the true ownership of the funds. Documents or records of any kind reflecting any connection with any such entity or transaction constitute evidence of the trafficker's participation in the illegal scheme.

i. Firearm and narcotic traffickers frequently utilize a continuing pattern of activities to launder and conceal narcotics and/or firearm-generated proceeds and assets, which lasts over a period of years. Firearm and narcotics traffickers use these patterns or schemes to create the appearance of legitimate income so that they can eventually convert the proceeds or assets to themselves or to a nominee under their control. In this way, the traffickers can enjoy and use their properties while attempting to conceal their illegal activities which generated the proceeds or assets.

    j.    Firearm and narcotic traffickers who deal in narcotics and illegal firearms often use cell phones to maintain contact with and receive text messages from their customers and suppliers and to further narcotics and/or firearm distribution activity.

    k.    Firearm and narcotic traffickers who deal in narcotics and/or illegal firearms often use firearms to protect their storage of drugs and/or firearms and the proceeds from sales of these drugs and/or firearms, and will often have the firearms closely available near these items. The information contained in this affidavit is based upon my personal observations and investigation, as well as on reports and statements of participating agents and investigators. This affidavit contains information necessary to support probable cause for this application. It is not intended to contain all information known by me or the government.

## FACTS OF THE INVESTIGATION

7. Between the dates of April 9 and July 10, 2019, ATF undercover agents purchased illegal narcotics and firearms from Jesus CELESTIN-ORTEGA and Pablo GUTIERREZ. Your affiant notes that GUTIERREZ was the point of contact during the undercover operation up until his arrest (which is explained below) and CELESTIN-ORTEGA is the source of supply for the narcotics and firearms. Between the above dates, several narcotics and firearm transactions were made.

8. On April 9, 2019, ATF undercover agents conducted a controlled purchase from CELESTIN-ORTEGA and GUTIERREZ. GUTIERREZ introduced ATF undercover agents, where ATF SA 5115 subsequently purchased two firearms, approximately eleven (11) grams of black tar

heroin, and approximately four hundred thirty-eight (438) grams of crystal methamphetamine from CELESTIN-ORTEGA and GUTIERREZ.

9. On April 23, 2019, ATF undercover agents again conducted a controlled purchase from CELESTIN-ORTEGA and GUTIERREZ. ATF SA 5115 purchased approximately four hundred fifty-seven (457) grams of crystal methamphetamine from CELESTIN-ORTEGA and GUTIERREZ.

10. On May 16, 2019, GUTIERREZ was arrested by the Denver Police Department for possession of a firearm by a prohibited person and possession of narcotics. After the arrest, GUTIERREZ was advised of his *Miranda* rights, which he waived and agreed to make a statement. During the interview, GUTIERREZ was questioned about the firearm and narcotics that were found on him. GUTIERREZ stated that the firearm and narcotics came from CELESTIN-ORTEGA and he provided CELESTIN-ORTEGA's cellular phone number.

11. On May 28, 2019, ATF undercover agents conducted a controlled purchase from CELESTIN-ORTEGA. ATF SA 5115 purchased two (2) firearms and approximately one (1) ounce of cocaine from CELESTIN-ORTEGA.

12. Prior to a meeting on June 12, 2019, between June 10, 2019 and June 12, 2019, SA 5115 and CELESTIN-ORTEGA exchanged text messages for the purposes of arranging the purchase of firearms and black tar heroin. On June 10, 2019, at approximately 2:17 p.m., CELESTIN-ORTEGA sent SA 5115 three (3) text messages of a firearm (*FIG 1*. *FIG 2* and *FIG 3*). Also,

at approximately 3:11 p.m., SA 5115 sent a text message to CELESTIN-ORTEGA asking about the "negra." In this context, "negra" is a Spanish street vernacular term, commonly used to refer to black tar heroin. At approximately 3:31 p.m., CELESTIN ORTEGA replied to SA 5115 stating, "Well I have it…" and asked SA 5115 when he wanted it.

13. On June 12, 2019, ATF undercover agents conducted an undercover controlled purchase from CELESTIN-ORTEGA. ATF SAs purchased two (2) firearms and approximately two hundred and thirteen (213) grams of black tar heroin from CELESTIN-ORTEGA. The below photo (*FIG 4*) is of the two (2) firearms purchased by ATF uncover agents from CELESTIN-ORTEGA on June 12, 2019. It should be noted that one (1) of the firearms in the photo is the same from the photos CELESTIN-ORTEGA sent to SA 5115 on June 10, 2019.



*FIG 1*     *FIG 2*



*FIG 3*                               *FIG 4*

14. ATF SAs subsequently received historical geolocation information on CELESTIN-ORTEGA's cellular phone, identifiable as (720) 828-1484.  This is the same phone number which CELESTIN-ORTEGA used to arrange the purchase of heroin and firearms with SA 5115.  Based on location information, on June 10, 2019, between the time of 2:14 p.m. and 3:38 p.m. when the photos of the firearm and text messages about the heroin were sent, CELESTIN-ORTEGA'S cellular phone was at the TARGET LOCATION, which can be verified by geo-mapping photos, as shown below.  This is the location which was subsequently identified as CELESTIN-ORTEGA's residence. The images below (*FIG 5* and *FIG 6*) show the radius in which the cellular device, belonging to CELESTIN-ORTEGA, was located during the time of the conversation. This image helps to better visualize the fact that CELESTIN-ORTEGA'S residence and CELESTIN-ORTEGA'S cellular phone were located in the same location. Based on training and experience, your affiant believes that CELESTIN-ORTEGA took the photos of the firearm in the TARGET LOCATION and sent them to SA 5115 and your affiant believes that CELESTIN-ORTEGA was storing the heroin in the TARGET LOCATION.



FIG 5          FIG 6

15. On July 10, 2019, ATF undercover agents conducted a controlled purchase from CELESTIN-ORTEGA. ATF SA 5115 purchased ten (10) firearms and approximately 3.4 grams of fentanyl pills from CELESTIN-ORTEGA.

16. On July 31, 2019, ATF SAs and ATF Task Force Officers (TFO) established surveillance on CELESTIN-ORTEGA. At approximately 0930 hours, the surveillance team observed CELESTIN-ORTEGA's known green Ford F150 (CO/OBZ689) parked in front of building 16 at the Gateway Park Apartments located at 4255 Kittredge Street, Denver, CO. At approximately 1002 hours, CELESTIN-ORTEGA exited the area between buildings 14 and 15, entered the Ford F150 and departed the area. At approximately 1556 hours, CELESTIN-ORTEGA parked his vehicle in front of building 15 located at 4255 Kittredge Street. CELESTIN-ORTEGA exited the vehicle and entered the TARGET LOCATION.

17. ATF SAs have received historical geolocation information on CELESTIN-ORTEGA's cellular phones since the early part of June 2019 at the late hours of the night and early hours of the

morning, the geolocation information has consistently been in the vicinity of the TARGET LOCATION. Current geolocation information of CELESTIN-ORTEGA's cellular phone on July 31 through August 3, between the hours of 12:00 a.m. and 8:00 a.m. and August 5-7, 2019, between the hours of 10:00 p.m. and 8:00 a.m., CELESTIN-ORTEGA's cellular phone has consistently been in the vicinity of the TARGET LOCATION. Furthermore, surveillance has observed CELESTIN-ORTEGA enter and exit the TARGET LOCATION on July 31, 2019 and on August 6, 2019. Based on my training and experience, your affiant believes this in an indication that CELESTIN-ORTEGA uses the TARGET LOCATION as his primary residence.

18. On August 6, 2019, at approximately 1:01 p.m., surveillance observed CELESTIN-ORTEGA exit the TARGET LOCATION, enter his known red Suburban (CO/CIN505), and depart the area. At approximately 1:51 p.m., CELESTIN-ORTEGA arrived at the meet location in the red Suburban where he advised ATF undercover agents that the pre-arranged narcotics deal for one (1) kilogram of china white heroin, ten (10) pounds of methamphetamine and ten (10) AR type firearms would not take place due to one of CELESTIN-ORTEGA's associates being arrested by law enforcement and all of his supply (firearms and narcotics) being moved to a unknown location or seized by law enforcement. CELESTIN-ORTEGA provided ATF undercover agents with a phone number (832) 836-0126 which SA 5115's cousin; an ATF undercover agent hereinafter referred to as SA 4155, who is located in Dallas, TX was to contact to pick up five (5) kilograms of methamphetamine. ATF undercover agents and CELESTIN-ORTEGA coordinated a future firearms and narcotics transaction to take place on August 13, 2019 at the meet location. Prior to leaving the meet location, CELESTIN-

ORTEGA advised ATF undercover agents that the caretaker of his stash house was arrested by immigration officials for illegally being in the United States. Furthermore, CELESTIN-ORTEGA advised ATF undercover agents that he was unable to contact or visit his caretaker because he is also illegally present in the United States and he does not want to run the risk of being arrested by immigration officials. CELESTIN-ORTEGA then showed ATF undercover agents suspected narcotics and a HK pistol both of which were in the red Suburban.

19. Based on training and experience, your affiant believes CELESTIN-ORTEGA exited the TARGET LOCATION with the suspected narcotics and firearm because he drove from the TARGET RESIDENCE to meet with agents where he clearly possessed both a firearm and suspected narcotics. Thus, there is probable cause to believe that the TARGET LOCATION will contain the items details in Attachment B. This is true despite CELESTINE-ORTEGA's statements regarding the recent loss of his stash of firearms and narcotics. Given his patterns of behavior, including the text messages of firearms and his transport of narcotics and a firearm to meet with agents, there is probable cause to believe that the items specified in Attachment B will be located in the TARGET RECIDENCE. As detailed above, firearm and narcotic traffickers store firearms, narcotics, the proceeds of sales of firearms/narcotics, and other indicia of firearm/drug trafficking in their residence. Not only has CELESTIN-ORTEGA demonstrated that he is a firearm and drug trafficker, but given your affiant's experience and training regarding traffickers like CELESTIN-ORTEGA, your affiant believes that the TARGET LOCATION will contain the items specified in Attachment B.

## CONCLUSION

20. Based on the foregoing, there is probable cause to believe that contained within the residence identified as 4255 Kittredge Street, Apartment 1511, Denver, CO, is evidence that has been used in the commission of a crime and constitutes evidence, fruits, and instrumentalities of violations of Title 21 U.S.C §§ 841(a)(1) and 846 and Title 18 U.S.C. § 922(a)(1)(A) and 922(g)(5). With the above information, your affiant formally requests the issuance of a search warrant for the aforementioned premises.

21. Pursuant to Rule 41(e)(2)(A)(i) of the Federal Rules of Criminal Procedure, your affiant understands and will act in accordance with the following: an agent is required to file with the courts an inventory return, that is, and itemized list of the property seized, within fourteen (14) days of the execution of the warrant.

22. The statements made in this affidavit are made based on your affiant's personal observations and investigation, and information communicated or reported to me during the investigation by other participants in the investigation, as the content of this affidavit indicates.

I declare under penalty and perjury that the foregoing is true and correct to the best of my knowledge.

*s/Keith Wilson*
Keith Wilson, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Submitted, attested to, and acknowledged by reliable electronic means on this 13th day of August, 2019.

Honorable Nina Y. Wang
United States Magistrate Judge

This application and affidavit was reviewed and submitted by AUSA Pegeen Rhyne.